UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | Case No. 24-cv-11160 |
| Plaintiff, | F. Kay Behm<br>United States District Judge |
| v. | |
| SAHABI CONVENIENCE STORE, INC., *et al.*, | |
| Defendants. | |
| _____ / | |

**OPINION AND ORDER ON PLAINTIFF'S
<u>MOTION FOR DEFAULT JUDGMENT (ECF No. 16)</u>**

**I.   PROCEDURAL HISTORY**

This matter is before the court on Plaintiff Joe Hand Promotions, Inc.'s ("Joe Hand") Motion for Default Judgment against all Defendants: Sahabi Convenience Store, Inc., Opyum Lounge LLC d/b/a Opyum Lounge, Antonio Bradley, and Hossein Sahabi ("Defendants") (ECF No. 16).  Plaintiffs filed a Complaint on May 1, 2024 (ECF No. 1) and served the Summons and Complaint upon Opyum Lounge LLC and Antonio Bradley on May 13, 2024.  *See* ECF Nos. 6, 7.  Plaintiff properly served the Summons and Complaint on Sahabi Convenience Store, Inc. and Hussein Sahabi on May 16, 2024.  *See* ECF Nos. 4, 5.

1

Fed. R. Civ. P. 12(a)(1) provides that a defendant must provide an answer within twenty-one (21) days of being served with a summons and complaint. Accordingly, Defendants Opyum Lounge LLC and Antonio Bradley were required to file an answer no later than June 3, 2024. Defendants Sahabi Convenience Store, Inc. and Hussein Sahabi were required to file an answer no later than June 6, 2024. Defendants failed to appear, answer, or otherwise respond to the Summons and Complaint. Upon the failure of the Defendants to timely file a responsive pleading, Requests for Entry of Default were filed on June 7, 2024. *See* ECF Nos. 8, 11. On June 10, 2024, Default was entered against Defendants Sahabi Convenience Store, Inc., Opyum Lounge LLC d/b/a Opyum Lounge, Antonio Bradley and Hossein Sahabi. *See* Doc. Nos. 12-15. Plaintiff now files the instant Motion for Default Judgment pursuant to Fed. R. Civ. P. 55(b)(2).

For the reasons set out below, the court **GRANTS** the Motion (ECF No. 16), and finds Defendants jointly and severally liable for damages.

## II.   FACTUAL BACKGROUND

Plaintiff Joe Hand alleges that Defendants Opyum Lounge LLC and Sahabi Convenience Store, Inc., collectively do business as and own and/or operate the "Opyum Lounge" club in the state of Michigan. Individual defendants Hossein Sahabi and Antonio A. Bradley are likewise alleged to own and operate Opyum Lounge and are the alleged officers or principals of the entity or entities owning and operating Opyum Lounge.

Joe Hand alleges the following nationwide telecasts were shown at Opyum Lounge on the associated dates ("Programs"), in violation of 47 U.S.C. § 605, *et seq.*, 47 U.S.C. § 553, *et seq*, and 17 U.S.C. § 101, *et seq.*:

> *Floyd Mayweather Jr. vs. Logan Paul* (June 6, 2021)
> *Gervonta Davis vs. Mario Barrios* (June 26, 2021)
> *Terence Crawford vs. Shawn Porter* (November 20, 2021)
> *Canelo Alvarez vs. Dmitry Bivol* (May 7, 2022)
> *Devin Haney vs. Vasiliy Lomachenko* (May 20, 2023)
> *Canelo Alvarez vs. Jermell Charlo* (September 30, 2023)

According to Plaintiff, Joe Hand held the exclusive commercial license to distribute and authorize the public display of these broadcasts (in other words: they were pay-per-view events). ECF No. 1, PageID.3. The broadcasts of the Programs were transmitted to cable systems and satellite television companies via satellite signal. *Id.* These interstate satellite transmissions were electronically coded or scrambled and were

not available to (or intended for) the free use of the general public on the dates of their original broadcast. The Programs were thus legally available to the Defendants for broadcast after paying a commercial sublicense fee for each Program to Plaintiff (fees are calculated based on the size of the establishment). *Id.* at 4.

However, Plaintiff alleges that Defendants paid no such fee to Plaintiff and circumvented the fees by unlawfully obtaining the broadcast. The exact method used here is unknown, but typically, Plaintiff claims, illegal interception and/or receipt of such programs (often referred to as piracy) is accomplished by intercepting signal from a nearby residence, registering a business as a residence, moving a residential receiver to their business, using online access offering the programs for non-commercial use, or otherwise obtaining the programs in violation of the terms of their television service provider agreement. *Id.* These commercial locations seeking to circumvent commercial broadcast fees then proceed to link their signals to their establishment's television screens to unlawfully exhibit the program commercially (such as by charging cover fees).

Put simply: Joe Hand alleges that Defendants willfully obtained the PPV broadcast of particular boxing events ("Fight Nights") without paying any licensing fees, but nonetheless proceeded to advertise and show those fights for their patrons at their nightclub.

## III.  STANDARD OF REVIEW

"Entry of default and a default judgment are distinct events that require different treatment." *Ramada Franchise Sys. Inc.*, 220 F.R.D. 303, 305 (N.D. Ohio 2004) (internal citation omitted).  An entry of default is a prerequisite to a default judgment.  Pursuant to Fed. R. Civ. P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  An entry of default "conclusively establishes every factual predicate of a claim for relief." *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (citing *Harmon v. CSX Transp.*, 110 F.3d 364, 368 (6th Cir. 1997)).  However, entry of a default does not establish damages.  *See Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995); *see also Kelley v. Carr*, 567 F.Supp. 831, 841 (W.D. Mich. 1983) ("A default judgment on well-pleaded allegations establishes only

5

defendant's liability; plaintiff must still establish the extent of damages.")

Default judgment is governed by Fed. R. Civ. P. 55(b)(2). On entry of default, the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true, with the exception of allegations as to the amount of damages. *Thomas*, 489 F.3d at 299; *see also Kelley*, 567 F. Supp. at 840. Thus, the plaintiff is required to provide proof of all damages sought in the complaint. *See John E. Green Plumbing and Heating Co., Inc. v. Turner Constr. Co.*, 742 F.2d 965, 968 (6th Cir. 1984) ("We recognize that the law 'does not require impossibilities' when it comes to proof of damages, but it does require whatever 'degree of certainty tha[t] the nature of the case admits.'") (internal citations omitted). Fed. R. Civ. Pr. 55(b)(2) allows courts to conduct hearings in order to "determine the amount of damages" so it may effectuate a judgment.

## IV. ANALYSIS

### A. Default as to Liability

Because a default has been entered, all of Plaintiff's well-pleaded allegations, except those relating to damages, are deemed admitted.

6

The facts must be "sufficient to support a finding of liability as to each defendant." *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006). Plaintiff requests a finding of liability under 47 U.S.C. § 605. Section 605 prohibits the transmission, receiving, intercepting, or publishing of radio communications without authorization. 47 U.S.C. § 605(a); *G&G Closed-Cir. Events, LLC v. Bros. Bar & Grill, LLC*, No. 23-12999, 2024 WL 4457840, at *3 (E.D. Mich. Oct. 10, 2024). In analyzing violations of § 605, "[c]ourts look to whether (1) the plaintiff had a propriety interest in the communication; (2) the defendant intercepted that communication; and (3) the defendant unlawfully divulged the communication to its patrons." *Joe Hand Promotions, Inc. v. Turner*, No. 3:19-CV-012, 2021 WL 1383267, at *3 (S.D. Ohio Apr. 13, 2021) (citing *National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 914–17 (6th Cir. 2001)). When the defendant is an individual, "plaintiff must allege facts establishing that the individual had a right and ability to supervise the infringing activities and that the individual had a direct financial interest in those same activities." *J & J Sports Prods., Inc. v. Matti*, No. 13-13963, 2015 WL 143932, at *3 (E.D. Mich. Jan. 12, 2015) (collecting cases).

7

Treating all of Plaintiff's well-pleaded allegations as admitted, Plaintiff has established that it had a proprietary interest in the broadcasts because it had an exclusive commercial license to distribute and broadcast the fights at issue. Plaintiff is also entitled to a finding that it has established that Defendants "intercepted" their communication. Where a defendant's default prohibits discovery on the method of interception, courts allow recovery under § 605. *See, e.g.*, *Joe Hand Promotions, Inc. v. Chapman*, No. 2:15-CV-460, 2016 WL 3881121, at *1 (N.D. Ind., Jul. 18, 2016); *Joe Hand Promotions, Inc. v. L.A. Moon LLC,* No. 12-CV-446-WMC, 2013 WL 633572, at *1 (W.D. Wis. Feb. 20, 2013) (allowing recovery under Section 605 in the absence of evidence that defendant in default intercepted plaintiff's broadcast over satellite). Finally, the Program was displayed to Defendants' patrons without Plaintiff's consent or authorization. *See Joe Hand Promotions, Inc. v. Dewberry*, No. 19-CV-12218, 2020 WL 2764604, at *3 (E.D. Mich. May 28, 2020). Plaintiff provided affidavits from two "auditors" it sent to Opyum Lounge who reported viewing two of the six challenged broadcasts (the specific fights they report viewing were "undercard" bouts, which involve different combatants than the names

8

listed as the main event but are part of the same pay-per-view event). *See* ECF Nos. 16-5, 16-6. Plaintiff also provided advertisements that Opyum Lounge posted on Facebook to promote each of the six events. *See* ECF No. 16-7, PageID.97-106. On default, the court accepts as true that all six broadcasts of the Programs occurred on the dates alleged and that Defendants did not pay for a sublicense to broadcast the Programs. Defendants Sahabi Convenience Store, Inc. and Opyum Lounge LLC are alleged to do business as Opyum Lounge and are therefore directly liable for these unauthorized broadcasts.

Meanwhile, both individual Defendants may also be held vicariously liable under § 605. Plaintiff has alleged that both individual Defendants had a right and ability to supervise the activities of the Establishment, and that they had an obvious and direct financial interest in the activities of Opyum Lounge by being the owners of Opyum Lounge. ECF No. 1, PageID.3.

Accordingly, the court will enter full and final judgment in favor of Plaintiff and against Defendants. The court finds that Plaintiff has established that it is an aggrieved party under 47 U.S.C. § 605. The court also concludes that Defendants failed to answer or otherwise

defend following proper service. The allegations in Plaintiff's Complaint are thus deemed admitted against Defendants and establish sufficient facts to prove liability under the statute.

Having established liability, Plaintiff must next establish damages.

### B. Findings as to Damages

#### i. *Statutory damages*

Statutory damages are appropriate where actual damages are hard to prove. *E.g.*, *Zuffa, L.L.C. v. Holtsberry*, No. 3:12cv1191, 2013 U.S. Dist. LEXIS 7145, at *9 (N.D. Ohio Jan. 17, 2013). Under § 605(e)(3)(C)(i)(II), the court may award statutory damages for each violation "in a sum not less than $1,000 or more than $10,000, as the court considers just . . . ." As another court in this district put it in *J & J Sports Prods., Inc. v. Trier*, No. 08–cv–11159, 2009 U.S. Dist. LEXIS 6415, at *3 (E.D. Mich. Jan. 29, 2009), "[f]acts relevant to this determination include the number of patrons in the establishment at the time the violation occurred, the seating capacity of the establishment, the various rates, including the residential rate, charged by the plaintiff for the viewing of the broadcast, and whether the

10

defendant charged patrons a cover for the viewing or was likely to have obtained significant profits in another manner." *See also Joe Hand Promotions, Inc. v. Granada Lounge, Inc.*, No. 11-13062, 2012 WL 447272, at *2 (E.D. Mich. Feb. 13, 2012).

Here, Plaintiff has alleged that the total cost that Defendants would have paid in order to exhibit the six challenged broadcasts was $8,350. *See* Rate Cards, ECF No. 16-4. There were 34 and 69 patrons in Opyum Lounge on the two occasions that Plaintiff sent auditors. ECF Nos. 16-5, 16-6. On those occasions, Opyum Lounge apparently charged those patrons a $20 and $10 cover charge, respectively. *Id.* Plaintiffs seek statutory damages equal to the rates that Defendants should have paid to show the Programs as well as the estimated profits generated from those cover charges.

The court finds that both awards are reasonable and just. The court therefore awards $10,020.00 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), which includes the licensing fees Defendants would have paid to legally exhibit the broadcasts at Opyum Lounge for all six broadcasts ($8,650.00) plus the estimated profits Defendants made from cover charges on June 26, 2021 ($20.00 cover charge, 34

11

patrons present) and September 30, 2022 ($10.00 cover charge, 69 patrons present).

> ii. *Enhanced damages*

47 U.S.C. § 605(e)(3)(C)(ii) permits the court, in its discretion, to increase the award of damages up to $100,000 for each violation that "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain . . . ." Plaintiff seeks $50,100 in enhanced damages for a willful violation of § 605, equal to five times statutory damages. The court agrees that Plaintiff is entitled to enhanced damages, but finds that a five times multiplier is unwarranted in this case.

First, the court finds that both of the criteria for awarding enhanced damages have been met. Plaintiffs have alleged sufficient facts to prove that the violations were willful. "Signals do not descramble spontaneously, nor do television sets connect themselves to [satellite] distribution systems." *Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999). Failure to defend has been considered evidence of willfulness within this circuit. *See, e.g., J & J Sports Prods., Inc. v. Tonita Restaurant,*

*LLC*, No. 5:13-cv-382, 2015 WL 9462975, at *4 (E.D. Ky. Dec. 28, 2015). Repeated violations are evidence of willfulness. *Buckeye Cablevision, Inc. v. Sledge*, 3:03CV7561, 2004 WL 952875, at *2 (N.D. Ohio Apr. 8, 2004). So is charging cover. *See J & J Sports Prods., Inc. v. Saylis Hookah Lounge & Cafe, LLC*, No. 1:18-CV-00488, 2018 WL 6421292, at *2 (W.D. Mich. Nov. 19, 2018*), report and recommendation adopted*, No. 1:18-CV-488, 2018 WL 6416347 (W.D. Mich. Dec. 6, 2018). All of these indicia are present here, and thus Plaintiff is entitled to a finding that the violation was willful.

Section 605 also provides that the infringement be "for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(c)(ii). Joe Hand has likewise adequately proven that the broadcasts of these Programs at Opyum Lounge were for commercial purposes and/or private financial gain. Defendants advertised the broadcasts on social media, sold drinks and food at their nightclub during the broadcasts, which were played on approximately 10 television screens across the lounge (*see* ECF No. 16-5), and charged a cover fee for entry into the club on those nights they advertised the broadcasts.

13

The court thus must determine the appropriate amount of enhanced damages, which is typically achieved by multiplying statutory damages. In awarding enhanced damages under § 605(e)(3)(C)(ii), many courts in this district have fairly routinely applied a three times multiplier in similar cases (for clarity: the total award, statutory plus enhanced damages, was 3x the statutory amount). *See Joe Hand Promotions, Inc. v. My Shisha Lounge, LLC*, No. 19-CV-12200, 2020 WL 13504977, at *3 (E.D. Mich. June 11, 2020) (trebling statutory damages); *Joe Hand Promotions, Inc. v. M & J Ballpark, Inc.*, No. 15-14484, 2016 WL 4750087, at *3 (E.D. Mich. Sept. 13, 2016) (same); *Joe Hand Promotions, Inc. v. Granada Lounge, Inc.*, No. 11-13062, 2012 WL 447272, at *3 (E.D. Mich. Feb. 13, 2012) (same); *see also J & J Sports Prods., Inc. v. Ribeiro*, 562 F. Supp. 2d 498 (S.D.N.Y. 2008). In determining that the appropriate multiplier should be three, one court observed that "although the amount of damages should be an adequate deterrent, a single violation is not so serious as to warrant putting the restaurant out of business." *Ribeiro*, 562 F. Supp. 2d at 502 (internal citation omitted). As that court indicated, when considering enhanced damages, courts typically also consider whether a defendant has

repeatedly pirated events. *See Joe Hand Promotions, Inc. v. Pickett*, No. 5:15cv478, 2016 WL 3668162, at *5 (N.D. Ohio July 11, 2016) (trebling damages where no repeat violations).

A few courts have used different multipliers. *E.g.*, *Joe Hand Promotions, Inc. v. Dewberry*, No. 19-CV-12218, 2020 WL 2764604, at *6 (E.D. Mich. May 28, 2020) (two and a half times); *J & J Sports Prods., Inc. v. Holbrook*, No. 17-11312, 2018 WL 4688934, at *4 (E.D. Mich. Sept. 28, 2018) (multiplying statutory base by three because defendant was a repeat offender, and then doubling that total as enhanced damages). And some courts in similar cases in this district have declined to provide for "enhanced" damages under this provision at all. *See G&G Closed-Cir. Events, LLC v. Bros. Bar & Grill, LLC*, No. 23-12999, 2024 WL 4457840, at *5 (E.D. Mich. Oct. 10, 2024) (even where willful and for commercial gain, declining to award enhanced damages); *J & J Sports Prods., Inc. v. Cruisin1, Inc.*, No. 17-cv-11155, 2019 WL 1584538, at *4 (E.D. Mich. Apr. 12, 2019) (declining to find willfulness where the defendant defaulted and there were no proofs as to how the signal was obtained).

The court finds that three considerations warrant enhanced damages. First, the Defendants here have multiple violations and are therefore repeat offenders, where many of the comparator cases deal with only a single violation via a single broadcast. *E.g.*, *Joe Hand Promotions, Inc. v. Dewberry*, No. 19-CV-12218, 2020 WL 2764604 (E.D. Mich. May 28, 2020). Unlike those cases, this is a case where Plaintiff alleges six different violations in a single case. Second, the court finds that enhanced damages are necessary to account for "unseen" profits by the Defendants. For example, on each of the nights the challenged broadcasts were shown, Opyum Lounge presumably made some amount of profit over and above what it would have made otherwise, by selling food and drink to the patrons it attracted when it promoted its illegal broadcasts. ECF No. 1, PageID.5. Additionally, Opyum Lounge presumably charged a cover on nights that Plaintiff did not send an auditor. Those likely profits are not accounted for in the statutory damages sought by Plaintiff, but Plaintiff has alleged sufficient facts to prove their existence; an enhanced damages award thus accounts for greater "proportionality between the loss suffered by the plaintiff and the profit gained by the defendant." *See J & J Sports Prods., Inc. v.*

16

*Ribeiro*, 562 F.Supp.2d 498, 501 (S.D.N.Y. 2008). Third, the court finds that enhanced damages are necessary to provide the deterrent effect intended by the statute. Merely charging Defendant what they would have paid otherwise does little to deter future violations. At the same time, the multiplier should not be so high as to put the Defendants out of business. *See Ribeiro*, 562 F.Supp.2d at 501.

The weight of authority in this district leans toward applying a three times multiplier to the statutory award, which is justified by the facts of this case. The court therefore finds that a just award requires trebling the statutory damages, and awards $20,040 in enhanced damages on top of the statutory award, for a total of $30,060 inclusive of statutory and enhanced damages.

      *iii.*   *Attorney's fees and costs*

Finally, under § 605(e)(3)(B)(iii), the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." Joe Hand submitted its attorney's declaration, stating that he billed his client for six hours. *See* Kavanaugh Decl., ECF No. 16-7, PageID.94. These hours were billed at hourly rate of $250 – a rate customarily charged for anti-piracy

17

litigation in similar cases. *E.g.*, *Joe Hand Promotions, Inc. v. Potopsky*, No. 1:10-cv-1474, 2011 U.S. Dist. LEXIS 72229, at *11 (N.D. Ohio July 6, 2011). The court deems this amount reasonable. *See id.* (6 hours reasonable). Finally, the filing and service costs incurred by Joe Hand are no more than necessary. *See* ECF No. 16-7, PageID.95, ¶ 10 (reporting filing fee of $405; and costs to effectuate service of $82). Thus, pursuant to § 605(e)(3)(B)(iii), Joe Hand's request for fees and costs in the amount of $1,987.00 is granted.

For ease of reference, the total calculation of damages is as follows:

| **Damages Award** | **Amount** |
|---|---|
| Statutory Damages<br>(47 U.S.C. § 605(e)(3)(C)(i)(II)) | $10,020.00 |
| Enhanced Damages<br>(§ 605(e)(3)(C)(ii)) | $20,040.00 |
| Attorney's Fees<br>(§ 605(e)(3)(B)(iii)) | $1,500.00 |
| Costs<br>(§ 605(e)(3)(B)(iii)) | $487.00 |
| **TOTAL** | **$32,037.00** |

## V. CONCLUSION

Therefore, the court **GRANTS** Plaintiff's Motion for Default Judgment (ECF No. 16) and finds Defendants jointly and severally liable to Plaintiff Joe Hand Promotions, Inc., in the amount of $32,037.00. This is a final order that closes the case.

**SO ORDERED**.


Date: October 24, 2024                    s/F. Kay Behm
                                          F. Kay Behm
                                          United States District Judge